UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICIA M. ROBINSON,                          Case No. 20-12117

                           Plaintiff,          Sean F. Cox
v.                                             United States District Judge

COMMISSIONER OF SOCIAL                         Curtis Ivy, Jr.
SECURITY,                                      United States Magistrate Judge

                           Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 19, 23)**

Plaintiff Patricia Robinson brings this action pursuant to 42 U.S.C. § 405(g),

challenging the final decision of Defendant Commissioner of Social Security

("Commissioner") denying her applications for Disability Insurance Benefits

("DIB") and Supplemental Security Income ("SSI") under the Social Security Act

(the "Act").  This matter is before the United States Magistrate Judge for a Report

and Recommendation on Plaintiff's motion for summary judgment (ECF No. 19),

the Commissioner's cross-motion for summary judgment (ECF No. 23), Plaintiff's

reply (ECF No. 24) and the administrative record (ECF No. 14).

For the reasons below, it is **RECOMMENDED** that the Court **DENY**

Plaintiff's motion for summary judgment (ECF No. 19), **GRANT** Defendant's

motion for summary judgment (ECF No. 23), and **AFFIRM** the Commissioner's decision.

## I.      DISCUSSION

### A.      Background and Administrative History

Plaintiff alleges her disability began on February 9, 2018, at the age of 52. (ECF No. 14, PageID.58).  She applied for disability insurance benefits and supplemental security income on February 14, 2018.  In her disability report, she listed two ailments which detracted from her ability to work: hypothyroidism and carpal tunnel in both hands.  (*Id.* at PageID.274).  Her application was denied on June 8, 2018.  (*Id.* at PageID.58).

Following the denial, Plaintiff requested a hearing by an Administrative Law Judge ("ALJ").  (*Id.* at PageID.145-47).  On September 17, 2019, ALJ Nicole Quandt held a hearing, at which Plaintiff and a vocational expert ("VE"), Stephanee Leech, testified.  (*Id.* at PageID.75-98).  On September 27, 2019, the ALJ issued an opinion which determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (*Id.* at PageID.58-68).  Plaintiff later submitted a request for review of the hearing decision which was denied on June 17, 2020.  (*Id.* at PageID.44-47).  Thus, the ALJ's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on August 6, 2020.

## B.    The Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 9, 2018, the alleged onset date.  (ECF No. 14, PageID.60).  At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: carpal tunnel syndrome, thyroid disorder, degenerative disc disease, and occipital neuralgia.  (*Id.* at PageID.61-62).  At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (*Id.* at PageID.62).  **Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[1] and determined that Plaintiff had the RFC:

> to perform light work . . . except can lift and carry a maximum of 10 pounds; frequent pushing and pulling with the bilateral upper extremities; frequent overhead reaching and reaching in all other directions; frequent handling and fingering; frequent climbing of ramps and stairs; occasional climbing of ladders, ropes, and scaffolds; frequent balancing, stooping, kneeling, and crouching; occasional crawling; and no exposure to unprotected heights, moving mechanical parts, extreme cold, and vibration.

(*Id.* at PageID.62-66).  At **Step 4**, the ALJ determined that Plaintiff has no past

---

[1] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations.  20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

relevant work.  (*Id.* at PageID.66).  At **Step 5**, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined there were existing jobs in significant numbers within the national economy that Plaintiff could perform, such as reception/information clerk, office clerk, and bench assembly.  (*Id.* at PageID.67).  The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from February 9, 2018, through the date of the decision. (*Id.* at PageID.67-68).

### C.    Framework for Disability Determinations

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; (4) can return to past relevant work; and (5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §§ 404.1520, 416.920.[2]  The

---

[2] Citations to the regulations or Social Security Rulings are to those effective on the date of the application for disability benefits or the ALJ's decision, where appropriate, unless otherwise indicated.

Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that there is work available in the national economy the claimant can perform. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.") (citing *Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 148 (6th Cir. 1990)).

### D.   Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the

court does "not try the case *de novo*, resolve conflicts in evidence or decide

questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007);

*Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court,

to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial.

The Court must "'take into account whatever in the record fairly detracts from

[the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384,

395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487

(1951). Even so, "if substantial evidence supports the ALJ's decision, this Court

defers to that finding 'even if there is substantial evidence in the record that would

have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581

F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a

decision of the Commissioner will not be upheld where the SSA fails to follow its

own regulations and where that error prejudices a claimant on the merits or

deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting

*Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.    Analysis

The arguments Plaintiff raises on appeal relate to the impairments in her

upper extremities, and mostly to do with her bilateral carpal tunnel syndrome.

1.    Subjective Complaints/Credibility Determination

Plaintiff argues the ALJ's rejection of her allegations of disabling carpal

tunnel syndrome ("CTS") is unsupported by substantial evidence and the ALJ did

not properly evaluate the regulatory factors under SSR 16-3p.[3]  (ECF No. 19,

PageID.627-29).  While the ALJ claimed the RFC assessment was supported by

Plaintiff's testimony and Function Report, Plaintiff asserts that is not the case

because her statements consistently demonstrate she cannot use her hands or arms

as stated in the RFC.  (*Id.* at PageID.629-31).  The Commissioner contends the

ALJ supported the credibility determination with the discussion of the medical

evidence throughout the decision and the ALJ need not expressly address every

credibility factor.  (ECF No. 23, PageID.656-57, 659).  The Commissioner asserts

Plaintiff's Function Report lends some support to the RFC because Plaintiff

reported preparing daily meals and completing household chores.  (*Id.* at

PageID.660).

The Sixth Circuit has explained that an ALJ's findings based on the

credibility of the claimant are given great weight and deference.  *Cruse v. Comm'r*

*of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007).  Despite this deference, "an ALJ's

---

[3] Plaintiff cited the version of this Ruling that was superseded on October 25, 2017.  As Plaintiff filed her disability application during February 2018, the superseding version of the Ruling applies to her claim and is addressed here.

assessment of a claimant's credibility must be supported by substantial evidence."
*Walters*, 127 F.3d at 531.

According to SSR 16-3p, evaluating an individual's alleged symptoms
entails a two-step process that involves first deciding whether a claimant has an
"underlying medically determinable physical or mental impairment(s) that could
reasonably be expected to produce an individual's symptoms, such as pain." 2017
WL 5180304, at *2-3 (Oct. 25, 2017). The ALJ found the first step was satisfied
because Plaintiff's medically determinable impairments "could reasonably be
expected to cause the alleged symptoms." (ECF No. 14, PageID.63).

After step one is satisfied, when considering the intensity, persistence, and
limiting effects of an individual's symptoms, an ALJ should consider these seven
factors: (1) daily activities; (2) the location, duration, frequency, and intensity of
pain or other symptoms; (3) factors that precipitate and aggravate the symptoms;
(4) the type, dosage, effectiveness, and side effects of any medication an individual
takes or has taken to alleviate pain or other symptoms; (5) treatment, other than
medication, an individual receives or has received for relief of pain or other
symptoms; (6) any measures other than treatment an individual uses or has used to
relieve pain or other symptoms; and, (7) any other factors concerning an

individual's functional limitations and restrictions due to pain or other symptoms.[4]
SSR 16-3p at *4-8.  While an ALJ need not explicitly address all these factors, the
ALJ should sufficiently articulate specific reasons for the credibility determination
so that the claimant and any subsequent reviewer can "trace the path of the ALJ's
reasoning."  *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio
2005); *see also Dutkiewicz v. Comm'r of Soc. Sec.*, 663 F. App'x 430, 433 (6th Cir.
2016) ("The ALJ was not required to explicitly discuss [claimant]'s work history
when assessing his credibility. . . .").

It is clear the ALJ considered several of the factors in her decision.  First,
she expressly discussed Plaintiff's subjective complaints as follows:

> She reported she continued to work, but had made
> changes to her work activity beginning February 9, 2018
> (2E). In a March 2018 Function Report, the claimant
> alleged limitations in lifting, reaching, and using her
> hands. She described losing mobility in her arms, hands,
> and shoulders. Personal care tasks, such as brushing her
> hair, washing, and putting on shirts, was difficult. She
> prepared meals daily and was able to complete household
> chores (4E). At the hearing, the claimant testified that she
> is able to lift no more than 10 pounds due to lack of
> strength and grip. She has difficulty opening jars and
> cannot manipulate buttons or zippers. She reported that
> she sways when she walks; although she had reported in
> May 2019 that she could walk for hours, she believed
> things were progressing and she could not walk that long

---

[4] SSR 16-3p makes clear the focus is not on the claimant's propensity for truthfulness or character but on the consistency of her statements about the intensity, persistence, and limiting effects of symptoms with the relevant evidence.  *See* SSR 16-3p, 2017 WL 5180304, at *2, *6, *11.

> anymore.  She reported an ability to stand 1-2 hours
> (Hearing Testimony).

(ECF No. 14, PageID.63).  After considering the evidence, the ALJ stated she found Plaintiff's statements related to the intensity, persistence, and limiting effects of those symptoms "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (*Id.*).

The ALJ continued with a discussion of the record evidence, both that which supports Plaintiff's allegations and that which conflicts with her allegations.  (*Id.* at PageID.64-66).  The ALJ cited objective physical examinations noting decreased range of motion ("ROM"), tenderness, and spasm in the cervical spine; decreased ROM in both arms, hands, and shoulders; decreased strength in both hands; decreased sensation in the right hand; and decreased grip strength in both hands.  (*Id.* at PageID.64).  Aside from this evidence, the ALJ also noted that in May 2018 neurologist Dr. Ma found normal motor strength and sensation in the upper extremities, as well as good rapid alternative movements (test of coordination).  (*Id.* at PageID.435).  And Plaintiff's pain management specialist, Dr. Bleiberg, notes she exhibited pain behaviors with severe reaction to bilateral shoulder ROM, but when distracted she would move her shoulder normally with no pain complaint and past where she complained of pain passively.  (*Id.* at PageID.450).  Further, imaging studies showed no more than mild deformity.  (*Id.* at PageID.64).

The ALJ also addressed the types and effectiveness of medications and treatments. Specifically, Plaintiff reported pain medications Neurontin and Mobic improved her neck pain and extremity numbness; nerve blocks and injections reportedly provided good benefit; Plaintiff made significant improvements (estimated at 70-75% improvement) through 17 physical therapy sessions; and she declined hand surgery because she could not take time off work and her symptoms were not troublesome enough for surgery. The surgeon recommended steroid injections for her CTS. Plaintiff reported worsening ROM in the left shoulder after leaving physical therapy, but she had not been doing the home exercises and was encouraged to resume them. (*Id*.).

Finally, the ALJ addressed the opinion evidence, finding Plaintiff's Occupational Therapist's opinion and the State agency reviewing physician's opinion partially persuasive. (*Id.* at PageID.66).

Reading the decision as a whole, as is required, the undersigned is able to "trace the path of the ALJ's reasoning." *Cross*, 373 F. Supp. 2d at 733. The decision establishes the conflict between Plaintiff's complaints of disabling symptoms and medical evidence demonstrating medication, injections, and physical therapy helped alleviate her pain, mild objective studies, that she did not always present to physicians with reduced strength or ROM, and, once, the pain specialist noted "pain behaviors." That the ALJ did not repeatedly refer to her

11

assessment of Plaintiff's complaints when addressing the medical evidence is not cause for remand because the ALJ was not required to.  "While the ALJ must discuss significant evidence supporting his decision and explain his conclusions with sufficient detail to permit meaningful review, there is no requirement that the ALJ incorporate all the information upon which he relied into a single tidy paragraph."  *Newsome v. Comm'r of Soc. Sec.*, 2019 WL 7484048, at *10 (N.D. Ohio Dec. 5, 2019).

Though there is evidence in support of Plaintiff's subjective statements, the ALJ cited substantial evidence in support of her determination.  "Because 'a reasonable mind might accept [the evidence] as adequate to support' h[er] credibility determination, the court concludes that substantial evidence supports the ALJ's finding."  *Norris v. Commissioner*, 461 F. App'x 433, 2012 WL 372986, at *5 (6th Cir. 2012) (citing *Rogers*, 486 F.3d at 241).

Finally, Plaintiff challenges the ALJ's paragraph concluding the RFC assessment.  The ALJ stated the RFC assessment is supported by Plaintiff's testimony, Function Report, treatment records, and objective medical evidence. (ECF No. 14, PageID.66).  Plaintiff insists this is incorrect because her testimony and her Function Report do not support the RFC—had the ALJ credited her testimony, the ALJ would not have found she could lift 10 pounds and frequently handle and finger.  (ECF No. 19, PageID.629-31).

The undersigned does not view this paragraph as requiring remand.

Admittedly, not all of Plaintiff's testimony and Function Report support the RFC.

That said, some statements do not conflict with the assessment.  For example,

Plaintiff reported she cooks fresh, healthy foods daily and can complete inside

chores depending on her work schedule.  (ECF No. 14, PageID.291).  That the ALJ

did not list specific portions of the Function Report that support the RFC does not

require remand.  And despite this particular sentence in the last paragraph of the

RFC assessment, the ALJ's finding that Plaintiff's subjective statements differ

from the evidence is supported by substantial evidence.

> 2.   ALJ's Consideration of Dr. Young's Objective Findings

Plaintiff argues the ALJ erred in failing to address the objective findings of

Plaintiff's would-be hand surgeon, Dr. Young.  Dr. Young's June 3, 2019, Jamar

Grip Testing revealed grip strength of only five pounds bilaterally, while the norm

for women of Plaintiff's age is 65.8 pounds.  A two-point discrimination test

revealed results between 6mm and 10mm, which suggests fair to poor functioning

in her hands and peripheral nerve injury.  (ECF No. 19, PageID.621; ECF No. 14,

PageID.567).  The ALJ did mention these findings.  Plaintiff contends other

evidence in the record supports these findings.  She cites objective examinations

revealing decreased ROM, sensation, and strength in her hands.  (ECF No. 19,

PageID.622).  She then asserts the ALJ was required to evaluate the persuasiveness

of the objective findings under 20 C.F.R. § 404.1520c, and her failure to do so requires remand. (*Id.* at PageID.622-23).

The Commissioner argues the ALJ was not required to specifically mention particular evidence to demonstrate it was considered. In any event, the ALJ expressly recognized Plaintiff treated with Dr. Young in June 2019 and expressly mentioned some findings from that visit including moderate degeneration at the left first CMC joint (near the base of the hand) and positive Phalen's sign. (ECF No. 23, PageID.646-47). The ALJ also mentioned Plaintiff had decreased grip strength bilaterally, although not citing directly to Dr. Young's treatment notes. The Commissioner notes there is no evidence in the record of peripheral nerve injury, despite Plaintiff's assertion the two-point discrimination test revealed such injury. (*Id.* at PageID.647). Finally, the Commissioner contends Dr. Young's objective findings are not a medical opinion the ALJ was required to evaluate under the relevant regulations. Even if they were, Plaintiff did not point to a conclusion inconsistent with the RFC. (*Id.* at PageID.650-51).

Preliminarily, Plaintiff's assertion that the ALJ was required to assess the persuasiveness of Dr. Young's objective findings lacks merit. Objective test results are not medical opinions. Medical opinions under the Social Security Act are "statement[s] from a medical source about what you can still do despite your impairment(s)." 20 C.F.R. § 404.1513(a)(2). The ALJ is required to assess the

14

persuasiveness of medical opinions, not objective medical evidence.  *See* 20 C.F.R. § 404.1520c.

While the ALJ must cite substantial evidence in support of her decision, as mentioned, the ALJ need not cite or discuss every piece of evidence in the record to signify she considered it.  *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006) ("Even though the ALJ did not discuss (or maybe even consider) every piece of medical evidence relevant to [the claimant's impairment], the evidence that she did consider was substantial.").  Here, the undersigned cannot conclude the ALJ did not consider the Jamar and two-point discrimination test results when the ALJ expressly mentioned Dr. Young's findings of a positive Phalen's sign test and x-ray results found in the same "Objective Transcription" of Dr. Young's medical record.  (*See* ECF No. 14, PageID.567).  Nor can the undersigned conclude the ALJ disregarded evidence in Plaintiff's favor when she discussed the findings of reduced strength, ROM, and sensation in both arms and hands in the decision.

Plaintiff contends Dr. Young's objective tests show her "ability to handle and finger to be extremely restricted and inconsistent with [the ALJ's] findings that she can handle and finger frequently."  (ECF No. 19, PageID.622).  In support of this contention, she cites other records showing decreased strength, ROM, and

sensation in her hands.  This argument is unavailing.  First, Plaintiff has not presented evidence establishing that the Jamar and two-point discrimination test results equate to an inability to frequently handle and finger.  Second, and perhaps relatedly, this argument appears to be an attempt to have the Court reweigh the evidence or try the case de novo, which it may not do.  *See Haun v. Comm'r of Soc. Sec.*, 107 F. App'x 462, 465 (6th Cir. 2004) ("We may not reweigh conflicting evidence on appeal, but instead must affirm Judge Davis's decision because substantial evidence supports it.").  As for plaintiff's argument that her grip strength in her hands is significantly lower than what is normal for women her age, what constitutes an adult woman's "normal" grip strength is irrelevant.  "As the term 'residual' in RFC implies, RFC means something less than normal.'" *Lillard v. Colvin*, 2014 WL 3845173, at *10 (M.D. Tenn. Aug. 5, 2014).  The ALJ determined Plaintiff had the RFC to perform a reduced range of light work, not that she could perform normal work.

### 3.    ALJ's Assessment of Valtena's Opinion

During May 2019, Plaintiff underwent a functional capacities evaluation with Occupational Therapist Delores Valtena.  Ms. Valtena found Plaintiff had no or relatively minor problems in standing, sitting, and walking.  (ECF No. 14, PageID.559).  Plaintiff's "Rapid Exchange Grip" (grip quickly with each hand eight times) was 14 pounds.  While she complained of left shoulder pain, Plaintiff

could reach up 59 inches.  With nut/bolt assembly, she reached 0-59 inches in height, but had left hand tremors and dropped the nut six times.  She could lift 0 pounds overhead, 5 pounds to the floor, and 10 pounds to eye level, waist level, and as a max lift.  Plaintiff scored below 1% on the Minnesota Rate of Manipulation test which tests manual dexterity.  (*Id.*).  Ms. Valtena opined Plaintiff could work at the sedentary level and she can lift a maximum of 5 pounds "observed safely" and thus pushing and pulling were "not recommended."  There was no limitation with lower body mobility.  (*Id.* at PageID.563).

Although she recognizes Ms. Valtena is not an acceptable medical source, Plaintiff argues the ALJ's reasons for not fully crediting the opinion are not supported by substantial evidence.  According to Plaintiff, in her discussion of Ms. Valtena's findings, the ALJ inaccurately stated Ms. Valtena found Plaintiff could lift a maximum of 10 pounds.  Plaintiff insists this is inaccurate because testing showed she could lift 0 pounds overhead, 5 pounds to the floor, was limited to carrying 5 pounds, could not walk and carry, and her ability to push and pull were deferred due to pain.  Plaintiff also finds error in the ALJ's failure to address the finding of low grip strength of 14 pounds, which is lower than the norm of 55-65 pounds.  (ECF No. 19, PageID.626).  She contends the ALJ failed to set forth any reasons for not crediting the lifting, carrying, reaching, and handling limitations set forth in the opinion.  (*Id.* at PageID.627).

17

The Commissioner asserts the ALJ did not misunderstand Ms. Valtena's findings about lifting: the ALJ expressly recognized the different test results including that Plaintiff could lift a maximum of 10 pounds.  (ECF No. 23, PageID.654).  The Commissioner argues the ALJ's persuasiveness determination is supported by State agency reviewing physician, Dr. Andrews' opinion.  Dr. Andrews found carpal tunnel syndrome was one of Plaintiff's severe impairments yet concluded she could lift and carry 20 pounds occasionally and 10 pounds frequently, frequently push and pull, frequently reach in all directions, and frequently handle and finger.  (ECF No. 14, PageID.104-05).  The ALJ adopted these restrictions except for a departure in Plaintiff's favor by limiting her to lifting and carrying a maximum of 10 pounds.  Plaintiff did not challenge the ALJ's partial reliance on Dr. Andrews' opinion.  (ECF No. 23, PageID.644, 646, 653).

When evaluating medical opinion evidence, the ALJ need not defer or give any specific evidentiary weight to any medical opinion, even those from treating sources, pursuant to 20 C.F.R. §§ 404.1520c, 416.920c.[5]  ALJs must evaluate the "persuasiveness" of medical opinions by considering five factors: supportability, consistency, relationship with the claimant, specialization and "other factors that tend to support or contradict a medical opinion."  §§ 404.1520c(c)(1-5),

---

[5] The Commissioner does not argue Ms. Valtena's opinion, as an Occupational Therapist, is not subject to the "persuasiveness" analysis set forth in the regulations.

416.920c(c)(1)-(5). The "other factors" include the medical source's "familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." §§ 404.1520c(c)(5), 416.920c(c)(5). The "most important factors" are the supportability and consistency of the opinion. §§ 404.1520c(b)(2), 416.920c(b)(2).

In the view of the undersigned, the ALJ complied with the regulations in finding Ms. Valtena's opinion partially persuasive. First, the ALJ accurately recited Ms. Valtena's findings on objective testing. These findings included the reaching and lifting limitations, the grip strength test, and lower body mobility findings. (ECF No. 14, PageID.65). The ALJ was not wrong to note that Ms. Valtena found Plaintiff could lift no more than 10 pounds because that exactly mirrors some findings. The ALJ went further to mention the other lifting findings: "zero pounds overhead, 10 pounds to eye level, 10 pounds to waist level, 5 pounds to floor." (*Id.*). Plaintiff is correct the ALJ failed to mention the finding that Plaintiff had grip strength of only 14 pounds, nevertheless, Plaintiff has not demonstrated this is cause to remand the case. As noted earlier, the ALJ need not list every piece of evidence in the record to establish she considered it. Because of the ALJ's thorough review of Ms. Valtena's opinion, although missing express reference to the 14-pound grip strength finding, the undersigned cannot conclude the ALJ ignored the grip strength finding. And it is not as if the ALJ completely

disregarded evidence establishing reduced grip strength. The ALJ cited and discussed records showing this issue in the decision.

Second, the ALJ addressed the consistency and supportability of the opinion. The ALJ noted Ms. Valtena, as an occupational therapist, is not an acceptable medical source under 20 C.F.R. § 404.1502. She then addressed Ms. Valtena's opinion. To be clear, the opinion portion of the therapist's submission is short—she opined Plaintiff is limited to sedentary work and could lift "a maximum 5 [pounds] observed safely thus pushing/pulling not recommended." (ECF No. 14, PageID.563). She also opined Plaintiff had no limitation with lower body mobility or standing and walking. She did not opine on Plaintiff's ability to handle and finger during an eight-hour workday; the remainder of Ms. Valtena's findings are more properly considered objective evidence derived from testing, not medical opinion. The ALJ concluded the ultimate finding that Plaintiff was restricted to sedentary work was not supported by Ms. Valtena's "complete findings" because the therapist noted no limitation with lower body mobility including standing and walking. As for the lifting restriction, the ALJ relied on the fact that, with objective testing, Plaintiff could lift no more than 10 pounds; again, this is an accurate characterization of the findings. Together, these exertional abilities evinced an ability to engage in a mix of light and sedentary work, not just sedentary work. Recognizing light work calls for lifting up to 20 pounds at times,

coupled with Plaintiff's limitations, the ALJ reduced the range of light work available by finding her capable of lifting no more than 10 pounds.  (ECF No. 14, PageID.65-66).

        4.     Asserted Error at Step Five

Plaintiff's final argument on appeal is that the ALJ's Step Five determination is without substantial evidence in support because the hypothetical question posed to the vocational expert did not set out all of her limitations.  (ECF No. 19, PageID.631-32).  Because the hypothetical posed to the vocational expert here is essentially identical to the RFC, this is in reality a "veiled attack" on the ALJ's underlying RFC finding.  *See Kirchner v. Colvin*, 2013 WL 5913972, at *11 (E.D. Mich. Nov. 4, 2013) ("Kirchner's Step Five argument is a veiled attack on the ALJ's underlying RFC finding" because "this is not a scenario where the ALJ's hypothetical failed to match up to the RFC he ultimately imposed"); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999) ("To require the Commissioner to prove a claimant's RFC at step five is essentially to partially shift the burden of proof required of a claimant at step four to the Commissioner.").  "[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five."  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) *(citing Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 148 (6th Cir. 1990)).  The Commissioner has the burden of

proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391-92.

With the above conclusions in mind, the undersigned will address this final argument as it relates to the substantiality of the evidence in support of the RFC. Without question, Plaintiff experiences limitations caused by her carpal tunnel syndrome and issues with her shoulders and cervical spine, including reduce range of motion in the upper extremities and reduced grip strength. The ALJ acknowledged these facts. (ECF No. 14, PageID.63-64) (*see, e.g.*, ECF No. 14, PageID.419, 448, 450-51, 516, 541, 591). Again, although the ALJ did not mention Dr. Young's Jamar test and two-point discrimination test, or Ms. Valtena's finding of a 14-pound grip strength, this failure alone does not require remand. The Commissioner's point that Plaintiff has not demonstrated her grip strength results and fair to poor discrimination test result translate to a limitation in the frequency with which she can handle and finger is well-taken, as it is Plaintiff's burden to prove she is disabled by functional limitations, not diagnoses.

The ALJ marshaled substantial evidence in support of her decision. The ALJ discussed the improvement Plaintiff reported from pain medications, injections, and physical therapy. (ECF No. 14, PageID.64) (*see, e.g.*, ECF No. 14, PageID.414, 441, 594). She reported physical therapy and home exercises improved her symptoms around 70-75%. (*Id.* at PageID.467). In addition, the

ALJ partially relied on consultative reviewing physician Dr. Andrews' June 2018

opinion in which the doctor opined Plaintiff could occasionally lift 20 pounds,

frequently lift 10 pounds, frequently handle and finger, and frequently reach in all

directions.  (*Id.* at PageID.104-05).  As discussed earlier, the ALJ limited Plaintiff

to lifting no more than 10 pounds, thus rejecting that portion of Dr. Andrews'

opinion.  She adopted the rest of the opinion.  Absent from the record is an opinion

from another physician opining Plaintiff is incapable of frequently handling,

fingering, or reaching.

It is not the Court's role to "try the case *de novo* nor resolve conflicts in

evidence, nor decide questions of credibility," *Bradley v. Sec'y of Health and Hum.

Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988), but to determine whether the ALJ's

decision is supported by substantial evidence.  Plaintiff may disagree with the

ALJ's determination, and there may well be evidence one could reasonably

interpret to support a different conclusion, but this Court must defer to the

Commissioner's decision "even if there is substantial evidence in the record that

would have supported an opposite conclusion, so long as substantial evidence

supports the conclusion reached by the ALJ.'"  *Golden Living Ctr. v. Sec'y of

Health and Hum. Servs.*, 656 F.3d 421, 426 (6th Cir. 2011) (quoting *Key v.

Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  This is a case in which there is

substantial evidence supporting the ALJ's conclusion.  Thus, the undersigned suggests the findings of the Commissioner be affirmed.

### F.    Conclusion

Plaintiff has the burden of proof on her statements of error.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  Plaintiff has not shown legal error that would upend the ALJ's decision.  For all these reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 17), **GRANT** Defendant's motion for summary judgment (ECF No. 23), and **AFFIRM** the Commissioner of Social Security's decision.

## II.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: January 18, 2022                          s/Curtis Ivy, Jr.
                                                Curtis Ivy, Jr.
                                                United States Magistrate Judge